**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **MEDIA PRODUCTS, INC.,** | ) | |
| **Plaintiff** | ) | **CIVIL ACTION NO.: 3:12-cv-30100-KPN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DOES 1-120,** | ) | |
| **Defendants** | ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF**
**DOE 120 TO SEVER ALL CLAIMS AGAINST ALL DEFENDANTS**

**I.    INTRODUCTION**

On May 26, 2012, the plaintiff, Media Products, Inc. ("Media Products") filed a

*Complaint for Copyright Infringement* (the "*Complaint*") alleging that 120 unknown IP

address holders violated the United States Copyright Act, 17 U.S.C. §§ 101-1332, by

securing and sharing (but not with each other) a copy of the adult movie, "OMG! I

Fucked My Daughter's BFF! 2," using a peer-to-peer file-sharing system known as

"BitTorrent," *Complaint* ¶8.   As to the so-called Doe 120, Media Products alleges that

on February 21, 2012 an IP address of 98.229.34.143 simultaneously uploaded and

downloaded "OMG! I Fucked My Daughter's BFF! 2," *Complaint* ¶¶6, 7.[1]

To establish personal jurisdiction in this district, Media Products allegedly used

geo-location technology to trace the Internet Protocol ("IP") address of each IP address

holder to acquire the general location and time of an alleged infringement, *Complaint*, ¶4.

---

[1]    If the IP address holder designated as Doe 120 is called upon to answer the
*Complaint*, he will deny its core allegations, particularly the allegations of "willful"
copyright infringement.  Even if a copyright-protected movie was uploaded and
downloaded from a particular IP address, the person designated as Doe 40 was not the
person who uploaded and downloaded it.

According to Media Products, "Plaintiff has used its *best efforts to identify Defendants only in the geographic location of the Court*, and has cross-referenced the data with commercially available databases to ensure that all Defendants reside in the District. Such technology to identify the location of such Defendants is considered very accurate, *but not necessarily accurate in all cases*."[2] *Complaint*, ¶2.  (Italics supplied).  Similarly, Media Products alleges, "Defendant is known to Plaintiff only by the Internet Protocol ('IP') address assigned to that Defendant by his, her or its Internet Service Provider on the date and at the time at which the infringing activity of each Defendant was observed." *Complaint* ¶7.

Media Product's admission that its forensic methods are inaccurate underscores the basic unfairness of the wide net cast in this case.  An innocent defendant, such as Doe 120, is now faced with the choice of exonerating himself by paying the cost of a legal defense that probably would equal or exceed the amount demanded by the plaintiff for an early settlement (usually around $3,500.00) or paying such an amount in exchange for a release.  Regardless of how an innocent defendant might weigh the costs and benefits of each proposition, opting for early settlement will always cause him to feel like the victim of an extortionate plot.  Allowing a plaintiff, such as Media Products, so much leverage for the cost of one $350 filing fee only magnifies the basic unfairness of the lawsuit.

On June 5, 2012, the Court granted Media Products' *ex parte* motion for leave to

---

[2]     Doe 120 happens also to have been designated as the defendant, Doe 40 (with the same IP address of 98.229.34.143) in a nearly identical case involving the same copyright enforcement group and filed by the same attorney, albeit on behalf of a different plaintiff, in the Boston courthouse.  The case is *SBO Pictures. v. Does 1 – 40*, Docket No.: 1:12-cv-10804-FDS.  Granted, Boston and Springfield are within the same judicial district, but a defendant cannot truly reside within the geographic location of both courthouses.  It is perhaps an understatement then to allege that the geo-location technology is not necessarily accurate in all cases.

take early discovery, authorizing it to serve Rule 45 subpoenas on each Doe defendant's internet service provider ("ISP") as identified in Exhibit A of the *Complaint*. The subpoena is meant to compel each ISP to disclose the name, address, e-mail address, Media Access Control address, and the ISP's terms of service applicable to each defendant. If Media Products obtains this information, it intends to amend its *Complaint* to state the true names and addresses of each IP address holder, *Complaint* ¶7. The subpoena has issued and Doe 120 respectfully moves the Court pursuant to Fed. R. Civ. P. 21 for an order severing all Doe defendants from this case except for Doe 1.

## II.    **DISCUSSION**

The BitTorrent software allegedly allows a person to visit a private website and download a file containing digital media onto a program already installed on his computer. Once the original file (known as a "seed") is loaded, the BitTorrent program allegedly connects to hundreds or thousands of different users (known as "peers") who possess and share pieces of the particular media contained in the file, and it allegedly coordinates the copying of the media using the digital copies of those other peers. (*Complaint* ¶¶9, 10). Peers do not choose which pieces of the file are downloaded and uploaded, nor do they choose the peers to and from whom they send and receive the pieces. See, *Hard Drive Prods., Inc. v. Does 1-188*, , 809 F. Supp. 2d 1150, 1163–64 (N.D. Cal. 2011)) (Not necessary under BitTorrent Protocol that each Doe participated in or contributed to the downloading of each other's copies of the work at issue - or even participated in or contributed to the downloading by any other Doe).

Under Rule 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or

arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Although *The Declaration of Jon Nicolini*, attached as Exhibit B to Media Product's *Complaint*, purports to outline concerted action among the 120 defendants, on closer analysis it merely describes how the BitTorrent protocol works.  A majority of courts have specifically held that the properties of BitTorrent are insufficient to support joinder.  See, *Id.*; *Third Degree Films v. Does 1–3577*, No. C-11-02768 (LB), 2011 WL 5374569, at *3–*4 (N.D. Cal. Nov. 4, 2011); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 675-76 (S.D. Fla. 2011); *Hard Drive Prods., Inc. v. Does 1–30*, No. 2:11cv345, 2011 WL 4915551, at *2–*4 (E.D. Va. Oct. 17, 2011); *On the Cheap, LLC v. Does 1–5011*, No. C10– 4472 BZ, 2011 WL 4018258, at *1 (N.D. Cal. Sept. 6, 2011); *Pacific Century Int'l Ltd. v. Does 1–101*, 2011 WL 2690142, at *2–*4 (N.D. Cal. July 8, 2011); *Diabolic Video Prods. Inc. v. Does 1–2099*, 2011 WL 3100404, at *3–*4 (N.D. Cal. May 31, 2011); *Millennium TGA, Inc. v. Does 1–21*, 2011 WL 1812786, at *2–*3 (N.D. Cal. May 12, 2011); *Lightspeed v. Does 1–1000*, No. 10–cv–5604, 2011 U.S. Dist. LEXIS 35392, at *6–*7 (N.D.Ill. Mar. 31, 2011); *Millennium TGA Inc. v. Does 1–800*, No. 10–cv–5603, 2011 U.S. Dist. LEXIS 35406, at *5–*7 (N.D.Ill. Mar. 31, 2011); *IO Grp., Inc. v. Does 1–19*, No. 10–03851, 2010 WL 5071605, at *8–*12 (N.D.Cal. Dec. 7, 2010); *see also Raw Films v. Does 1–32*, No. 1:11–CV–2939–TWT, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011).

Media Products does not allege the existence of a common scheme among the IP address holders to use the BitTorrent protocol. Media Products does not allege the

existence of a common scheme among the IP address holders to reproduce and distribute any copyrighted material with each other.  Indeed, Media Products does not allege nor can it allege, within the ethical mandate of Rule 11, even a reasonable likelihood that each and every IP address holder, at relevant times, owned, controlled, or had access to a computer that included the BitTorrent client, any BitTorrent files, or any material to which Media Products holds a copyright.  Nothing in the *Complaint* (or in Nicolini's description of BitTorrent's properties) alleges that the IP address holders were engaged in the same transaction, occurrence, or the same series of transactions or occurrences.

Likewise, Media Products alleges that all 120 of the unknown IP address holders downloaded the same movie, but does not allege that any of them downloaded the same movie from any of the other 119 unknown IP address holders. Media Products does not allege that the 120 unknown IP address holders are jointly or severally liable. Media Products merely avers that 120 unrelated and unknown defendants used a BitTorrent system to download and upload the same movie, through independent actions, at different locations and at different times between February 1, 2012 and March 20, 2012.  See, *K-Beech, Inc. v. John Does 1-85*, No. 11-cv-00469-JAG, 2011 U.S. Dist. LEXIS 124581 (E.D. Va. Oct. 5, 2011) (Allegation that defendants committed the same type of violation in the same way does not link them together for purposes of joinder).

Although Media Products has asserted the same two counts of copyright infringement against all 120 unknown IP address holders, the Court should not ignore the separate issues of fact and separate defenses that will inevitably arise to each defendant. Some of the unknown IP address holders very well could have infringed a copyright as alleged, some could be an innocent parent whose internet access was abused by a minor

child, others might share a computer with a roommate who infringed a copyright as alleged, and yet others might have had an unsecured wi-fi signal that was hijacked by a neighbor or by a complete stranger who infringed Media Product's copyright.

Under Media Products' wide-open approach to joinder, there would be virtually no limit to the number of parties that can be joined. The Court should exercise its discretion to cure the procedural defects of the *Complaint* by severing all claims against all defendants except for Doe 1. This decision should not be deferred to a later phase of the case.

Rule 20(a)(2) is designed to promote judicial economy and trial convenience. See, *Mosley v. Gen. Motors*, 497 F.2d 1330, 1332-33 (8th Cir. 1974). Although Media Products might argue that administrative efficiency would justify deferring a decision on joinder during this expedited discovery phase, to accept that argument would only increase Media Products leverage to coerce unjust early settlements from improperly joined (and innocent) Doe defendants. In summary, efficiency concerns should not trump the requirements for joinder specified in Rule 20. As stated in the case of *Arista Records, LLC v. Does 1–11*, No. 1:07-cv-2828, 2008 WL 4823160, at *4 (N.D. Ohio Nov. 3, 2008):

> "[I]f Plaintiffs' Complaint does in fact violate the joinder requirements, Plaintiffs should not be permitted to proceed with their lawsuit until after the procedural defect is rectified. . . . The Federal Rules of Civil Procedure should not be cast aside merely in the name of potential efficiency. . . . [Additionally,] [i]n all likelihood, if the joinder decision were to be postponed, the Court would never have an opportunity to rule on the propriety of Plaintiffs' joinder of the Doe Defendants. *See Sony BMG Music Entm't v. Does 1–5*, No. CV 07–2434 SJO (JCx) (C.D.Cal. Aug. 29, 2007) ("Although Plaintiffs contend that the Defendant Does may question the propriety of joinder after they are identified, it is this Court's experience that an overwhelming majority of cases brought by recording companies against individuals are resolved without so much as an

6

> appearance by the defendant, usually through default judgment or
> stipulated dismissal.") . . . While overworked courts normally would
> appreciate one less motion to decide, by deferring a ruling on joinder in
> this case and if, as will be discussed below, the Doe Defendants are
> misjoined, Plaintiffs would be able to avoid paying $350 filing fees under
> 28 U.S.C. § 1914(a) for separate actions against each of the improperly
> joined Defendants. Although the government would not lose a substantial
> amount of filing fees from this case alone, other courts and commentators
> have noted that a consequence of postponing a decision on joinder in
> lawsuits similar to this action results in lost revenue of perhaps millions of
> dollars and only encourages Plaintiffs . . . to join (or misjoin) as many doe
> defendants as possible."

*Arista Records*, 2008 WL 4823160, at *5.  *See also, Patrick Collins, Inc. v. Does,* 2012

U.S. Dist. LEXIS 47687 (D. Md. Apr. 4, 2012); *IO Group, Inc. v. Does 1–435*, No. C 10–

4382 SI, 2011 WL 445043, at *3–*6 (N.D. Cal. Feb. 3, 2011); *Elektra Entm't Group, Inc.*

*v. Does 1–9*, No. 04 Civ. 2289 (RWS), 2004 WL 2095581, at *5–*7 (S.D.N.Y. Sept. 8,

2004); *BMG Music*, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004).

## III.   CONCLUSION

Joining all Doe defendants in a single proceeding would not fulfill the purpose of

Rule 20.  Therefore, all claims against all 120 defendants except for Doe 1 should be

severed from the case, and the claims against the other 119 Doe defendants should be

dismissed without prejudice. Doe 120 also requests that the internet service providers

who are now subject to a subpoena duces tecum will be excused from responding to the

plaintiff's subpoena until properly served as part of a separate action, if any are filed.

<div style="margin-left: 40%;">

Respectfully submitted,
The Defendant, Doe 120,

By his Attorneys,

 /s/Nicholas S. Guerrera
Nicholas S. Guerrera, BBO#551475
Shaheen Guerrera & O'Leary, LLC
Jefferson Office Park

</div>

820A Turnpike Street
North Andover, MA 01845
(978) 689-0800
Dated: 7/23/12                           nguerrera@sgolawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day sent electronically through the ECF system to all counsel of record for the parties.

Dated: 7/23/12                     /s/ Nicholas S. Guerrera
                                   Nicholas S. Guerrera