# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


DISCOUNT VIDEO CENTER, INC.    . CIVIL NO. 12-cv-10805-NMB
    Plaintiff                          .

        v.                          . BOSTON, MASSACHUSETTS
                           . July 30, 2012
DOES 1 - 29                      .
    Defendant 22                 .
. . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEO T. SOROKIN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the plaintiff:    Marvin N. Cable, Esq.
                         Law Offices of Marvin Cable
                         P.O. Box 1630
                         Northhampton, MA 01061
                         413-268-6500
                         law@marvincable.com


For the defendant:    Samuel Perkins, Esq.
                         Brody, Hardoon, Perkins
                         & Kesten LLP
                         One Exeter Plaza, 12th Floor
                         Boston, MA  02116
                         617-880-7100
                         sperkins@bhpklaw.com

                         Gregor A. Pagnini
                         Brody, Hardoon, Perkins
                         & Kesten LLP
                         One Exeter Plaza, 12th Floor
                         Boston, MA  02116
                         617-880-7100
                         gpagnini@bhpklaw.com


Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

*Judy Bond Gonsalves*
Certified Court Transcriber
Fairhaven, MA  02719
(508)  984-7003

15

1      THE COURT:  Essentially.  Essentially --

2      MR. PERKINS:  Let Mr. Cable and his client decide

3 whether they want to do it the right way.

4      And by the way, if they do it the right way,

5 they're not going to make anywhere near as much profit, and

6 you may see them not doing it at all.

7      THE COURT:  All right. Okay.  Mr. Cable?

8      MR. CABLE:  Well, you want me to respond to --

9      THE COURT:  Sure.

10      MR. CABLE:  -- some of the things?  Sure.

11      I guess the subscribers are not necessarily the

12 people who are the infringers, but sometimes they are.  And

13 we did not put in the complaint any secondary liability

14 claims like vicarious liability, contributory liability or

15 unfair enrichment or any sort of claims like that, but those

16 are foreseeable at least with some of these subscribers.

17      THE COURT:  Depending on what you learn.

18      MR. CABLE:  Right.

19      And the majority of these subscribers are actually

20 the infringers.  I'd speak to many of them on the phone day

21 in, day out.

22      THE COURT:  Don't you have --

23      Let me stop you there, though.

24      But you -- in your view you haven't sued the

25 subscribers.

1          MR. CABLE:  Right.  Right.

2          THE COURT:  And I assume the reason you haven't

3   sued the subscribers is because you don't believe you have a

4   good-faith basis under Rule 11 to assert at the moment -- or

5   at least not at this moment, but at the moment when you

6   filed the complaint -- a claim directly against them.

7          MR. CABLE:  Against them, right.

8          THE COURT:  Because of the uncertainty as to on

9   any given case as to whether the infringer was the

10  subscriber, --

11         MR. CABLE:  Uh-huh.

12         THE COURT:  -- or a relative of the subscriber

13  living in the same household, or whether it was someone

14  sharing the Internet service in the same household --

15         MR. CABLE:  Right.

16         THE COURT:  -- but wasn't a subscriber, or a guest

17  who used Internet service, or a person who accessed the

18  Internet service through the wireless router either without

19  permission because it was unsecured or without permission

20  because they broke into it.

21         MR. CABLE:  Right.

22         THE COURT:  Any one of those.  Or it could be in

23  an office.  Right?

24         MR. CABLE:  Uh-huh.

25         THE COURT:  These could be office locations.

17

1      MR. CABLE:  There has been a couple of cases where

2 they have been offices, and we can not figure out who they

3 are in the office, so we dismissed them.

4      THE COURT:  So given that, right, and then what am

5 I to make of the notice?

6      MR. CABLE:  The notice was drafted after the

7 London Sire Order.  Those -- I think it was Judge Gertner

8 that drafted that.

9      THE COURT:  Uh-huh.

10      MR. CABLE:  And I drafted it after that, because I

11 wanted to provide people who are getting these subpoenas --

12      THE COURT:  But it's wrong.

13      MR. CABLE:  You know --

14      THE COURT:  I mean, I have all the respect in the

15 world for Judge Gertner, but --

16      MR. CABLE:  Right.

17      THE COURT:  -- first of all, did she write the

18 order?

19      MR. CABLE:  She -- from -- I went on to the ECF,

20 and it was -- it said it was written by her.

21      THE COURT:  It was issued under her name.

22      MR. CABLE:  Right.  But there was no --

23      THE COURT:  Now it wasn't something you suggested.

24      MR. CABLE:  No, there was no proposed order.  This

25 was actually from 2004 from the R.A.A.A. era of these types

18

1  of cases.

2          THE COURT:  All right.  So putting aside --

3          Well, look, if Judge Gertner, whether or not she

4  was right in that case, would you agree with me that that

5  notice is correct or incorrect as served on the 29 people in

6  this case?

7          MR. CABLE:  I don't know.  If it's --

8          THE COURT:  Well, at the time it was served, is it

9  correct or incorrect as to those 29 people?

10          MR. CABLE:  In my opinion the majority of time

11  it's correct.

12          THE COURT:  How can it possibly be correct after

13  what you just told me?

14          MR. CABLE:  Well, because the majority of people I

15  speak to on the phone and just in general -- because I just

16  used to do a lot of defense work on this -- actually were

17  subscribers and infringers at the same time.

18          THE COURT:  Right, but -- Well, that's a totally

19  different thing, though.  That's not the question I asked.

20          MR. CABLE:  Okay.

21          THE COURT:  The question I asked is this:  At the

22  time the notice is served on the individual subscriber,

23  okay, is the notice correct or incorrect?

24          MR. CABLE:  The word you have been sued is

25  definitely something that could be changed.  Besides that

1  section --

2          THE COURT:  Well, let me ask you this.  I agree

3  everything in the notice could be changed, --

4          MR. CABLE:  Right.

5          THE COURT:  -- because for another reason I could

6  order you to change anything in the notice.  But putting

7  that aside, what --

8          And you have just told me that the persons named

9  as defendants are the infringers, and you know the

10 subscriber at the moment we serve the notice only as the

11 subscriber.

12         It may be -- we could all agree -- I think even

13 Mr. Perkins would agree that some of the subscribers are the

14 infringers, and you two will probably disagree as to what

15 the relative percentage is among the subscribers as to --

16 perhaps as to who's the infringer or who's not on a macro

17 level.

18         MR. CABLE:  Right.

19         THE COURT:  But at the time the notice is served,

20 unless I'm missing something, you're of the view that you

21 don't know whether any given subscriber is the infringer.

22         MR. CABLE:  But they are -- they're always going

23 to, in my opinion, be secondarily liable.  If they're not --

24         THE COURT:  Always.

25         MR. CABLE:  In my opinion.

20

1          THE COURT:  But you haven't sued them for

2 secondary liability.

3          MR. CABLE:  Because I don't know yet, and I think

4 that would be fishing, and I don't want to go there, because

5 --

6          THE COURT:  You wouldn't sign it under Rule 11.

7          MR. CABLE:  Right, exactly.

8          THE COURT:  Right.  So can you imagine a

9 circumstance where --

10          Can you imagine a circumstance in which somebody

11 would not be secondarily liable?

12          Let me give you a hypothetical.

13          MR. CABLE:  Sure.

14          THE COURT:  Suppose a person had Internet access

15 in their household.

16          MR. CABLE:  Subscriber.

17          THE COURT:  And the person is the subscriber.

18          And suppose that they give permission to a guest

19 who comes to their home for the weekend, a visitor, to use

20 their Internet access, has no -- and specifically instructs

21 at like hotels and provides a written agreement and says

22 sign this before you access my -- before I'll give you the

23 password for my Internet, and this says that you won't do

24 anything illegal, you won't infringe any copyrights, you

25 won't do anything other than things on the Internet that

1  you're lawfullyly allowed to do under the laws of the United

2  States and the Commonwealth of Massachusetts when located in

3  the Commonwealth.  And you agreed on this, and you agree to

4  understand it.  If you wish to consult legal counsel, feel

5  free to do so before you sign this and get my password for

6  my Internet.  And the person says okay, and they sign.

7  Right?

8          Now, is -- then the householder leaves, goes out

9  to work that day.  The person -- the visitor happens to be

10 there for a little while and downloads your client's movie.

11         Is the person who's the subscriber liable?

12         MR. CABLE:  No.  But that's based on -- that's a

13 very specific fact pattern that I would only find out

14 through discovery down the road.

15         THE COURT:  So would you agree with me -- would

16 you sue that -- would you name that subscriber as a

17 defendant?

18         MR. CABLE:  I would if I did not know those facts.

19 Even if they told me I did not do it, I would think about a

20 negligence claim, because they have in their terms of

21 service in their privacy agreement and everything else with

22 their ISPs that I will not violate copyright, or I will not

23 allow copyrights to be violated --

24         THE COURT:  How are they more liable than Comcast?

25         MR. CABLE:  They in their terms of service

1  actually agree to not violate copyright, and they --

2          So this is --

3          THE COURT:  By contract.

4          MR. CABLE:  By contract.

5          THE COURT:  Comcast is liable by law.

6          MR. CABLE:  Comcast.

7          But as a subscriber, you say in your agreement

8  with them to use the subscription -- Internet subscription

9  that you will not violate anyone's copyrights.

10         So, I know all the subscribers have violated

11 somebody's copyrights.

12         THE COURT:  But you're not a third-party

13 beneficiary of that contract.

14         MR. CABLE:  No.  No.  But the -- I know --

15         You're right.  I'm not -- I don't have privy to

16 the contract.

17         THE COURT:  I'm totally confused now, --

18         MR. CABLE:  Yes.

19         THE COURT:  -- because I thought you had told me

20 that you had not sued the subscribers.

21         MR. CABLE:  Uh-huh.

22         THE COURT:  That while you think many of the

23 subscribers are likely after investigation --

24         MR. CABLE:  Right.

25         THE COURT:  -- to be liable either as the

23

1  infringer or on a contributory negligence theory.

2          MR. CABLE:  Uh-huh.

3          THE COURT:  And I understand that theory where the

4  person may have knowledge, may participate, may -- different

5  than my somewhat extreme hypothetical.

6          MR. CABLE:  Right.

7          THE COURT:  But that you don't name them as

8  defendants at the beginning, because you don't know.   The

9  person who's named is this unidentified infringer, --

10          MR. CABLE:  Uh-huh.

11          THE COURT:  -- and what you're seeking is the

12  subscriber's identity as the first step, so you can figure

13  out who the infringer might be.  And then once you figure

14  that out, you can substitute for Doe whatever, whichever Doe

15  it is, the name of the person you believe to have been the

16  infringer or the persons of Doe --

17          MR. CABLE:  Right.

18          THE COURT:  Doe 22, just for example, might turn

19  out to be two defendants.

20          MR. CABLE:  Right.

21          THE COURT:  You could have an infringer and a

22  contributory infringer.

23          MR. CABLE:  Right.

24          THE COURT:  Or you could have one infringer who's

25  the subscriber or not the subscriber.  Right?

24

1        MR. CABLE:  Uh-huh.  Exactly.

2        THE COURT:  But given all that, how can it be

3  correct to say that a subscriber you have been sued, you are

4  a defendant, but they're not yet a defendant?

5        MR. CABLE:  I -- I don't know the direct answer to

6  that question.  I believe --

7        And again, I was basing it on the order from Judge

8  Gertner.

9        THE COURT:  Well, isn't the direct answer simply

10  that it's not right, and maybe it should be fixed?

11        MR. CABLE:  I -- I don't think it should be.

12        And I'm not trying to coerce people into settling

13  or anything like that.  That's not the point of it.  I do

14  feel that they have done something wrong.

15        THE COURT:  So let me ask you this.  Suppose that

16  you wanted to -- suppose that after further review on your

17  side you discovered there were ten more people in the swarm.

18        As I understand it from the allegations and facts

19  submitted in Mr. Nicolini's affidavit, the 29 people who are

20  the 29 infringements that arose out of the acts described in

21  this complaint were all infringants that downloaded the very

22  same hash-marked copy --

23        MR. CABLE:  Yes --

24        THE COURT:  -- of the movie, and that, therefore,

25  the conclusion is that those 29 people are all part of the

25

1  same swarm.

2          MR. CABLE:  Uh-huh.

3          THE COURT:  As I understand it, they might not be

4  the only people in the swarm, but there are 29 people who

5  are in the swarm in Massachusetts.

6          So suppose that after further reviewing evidence

7  or what-have-you, you or your client appreciated that there

8  were ten more people in the swarm in Massachusetts.

9          MR. CABLE:  Uh-huh.

10          THE COURT:  And so I presume that what you'd like

11  to do then is move to amend the complaint to add Does 30 to

12  39.  At least that would be a possibility.

13          MR. CABLE:  It's a possibility, yeah.

14          THE COURT:  Okay.  And if you were doing that --

15          Or you might file a new action --

16          MR. CABLE:  Correct.

17          THE COURT:  -- against those ten Does.  One or the

18  other.

19          MR. CABLE:  Right.  Right.  More likely that.

20          THE COURT:  More likely that.

21          All right.  So if you filed a new action, you'd

22  file the action.  You'd file a motion similar to the motion

23  you filed in this case for leave to take early discovery, so

24  you could identify who the subscribers are.

25          So the question I ask is in that case would you

26

1  submit -- what notice would you propose to the Court to

2  serve on the subscribers?

3         MR. CABLE:  I see where you're going.

4         I would change it to make it more -- to clarify

5  this issue that we're having, and I would say that your

6  Internet service -- you, as the Internet subscriber, has

7  been identified or as somebody whose Internet service has

8  violated these plaintiff's copyrights, and we are seeking to

9  figure out who the infringer is and some other language

10  suggesting --

11         THE COURT:  You would not say, "You have been

12  sued."

13         MR. CABLE:  I would not say that now just to

14  clarify this point -- this issue that we're having, and to

15  not have this happen again.

16         THE COURT:  All right.  Anything else for me to do

17  on this question?

18         MR. PERKINS:  I think you understand this stuff

19  very thoroughly, but I did want to make sure that one point

20  is clear here.  Well two points.

21         Number one, this is not a typographical error or

22  an oversight that crept into the notice that you sent out.

23         And by the way, Judge Gertner issued the London

24  Sire Order, what, eight years ago?  And in a case involving

25  downloading of music by University of Massachusetts

1 students.  Right?  It was the UMass server, or it was their

2 Internet connection that was being subpoenaed to find out

3 who the students were who were downloading songs.  Okay?

4          We're not talking about the same extortionate

5 pressure that there is on a housewife who's being told

6 you're being sued for downloading this movie.  That's point

7 number one.

8          Point number two --

9          THE COURT:  I take it our notice didn't go to

10 UMass.  It was to the individual students.

11          MR. PERKINS:  Well, the whole order package goes

12 to UMass, and UMass then distributes it the way Comcast does

13 to the subscribes in our case.

14          THE COURT:  Right.  But they're identifying --

15          MR. PERKINS:  UMass was the ISP.

16          THE COURT:  Yes.  But they, I presume, had

17 individual identifications of every --

18          The individual students at that point in time

19 weren't retransmitting, in a sense, Internet access to other

20 students.  Everyone had their own direct access to the UMass

21 system.

22          MR. PERKINS:  Yeah, I'm assuming at the time this

23 happened they actually went on ethernet cables --

24          THE COURT:  Yeah.

25          MR. PERKINS:  -- in their dorm rooms with IEP